ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| **NIMIA MARÍA RAMOS BEAUCHAMP**<br><br>Apelante<br><br>v.<br><br>**NOEMI HEBE RAMOS BEAUCHAMP; NICOLE ANTOINETTE RAMOS BEAUCHAMP**<br><br>Apelado | KLAN202401132 | **APELACIÓN** procedente del Tribunal de Primera Instancia, Sala Superior de **Bayamón**<br><br>Civil Núm.:<br>**BY2022CV05962**<br><br>Sobre:<br>Administración y Partición de Herencia |

Panel integrado por su presidenta, la Jueza Cintrón Cintrón, la Jueza Rivera Marchand y la Juez Barresi Ramos.

Cintrón Cintrón, Jueza Ponente

### SENTENCIA

En San Juan, Puerto Rico, a 15 de mayo de 2025.

Nimia María Ramos Beauchamp (en adelante "señora Nimia Ramos" o "parte apelante") nos solicita que revoquemos la *Sentencia* emitida el 22 de octubre de 2024, por el Tribunal de Primera Instancia (TPI), Sala Superior de Bayamón. Mediante la misma, desestimó sin perjuicio su causa de acción solicitando que se decretara la partición de las herencias de sus progenitores y que se le nombrara como administradora, ejecutora y contadora partidora de las herencias de ambos causantes, por falta de emplazamiento y de parte indispensable.

Por los fundamentos que expondremos a continuación, se revoca la *Sentencia* apelada.

### I.

El 21 de noviembre de 2022, la señora Nimia Ramos incoó *Demanda Para Administración y Partición de Herencia* en contra de sus hermanas, Noemí Hebe Ramos Beauchamp (en adelante "señora

Noemí Ramos" o "parte apelada") y Nicole Antoinette Ramos Beauchamp (en adelante "señora Nicole Ramos").

Mediante la misma, la parte demandante expresó que sus padres, la Sra. Hebe Iris Beauchamp Ocasio y el Sr. Reinaldo Ramos Nazario fallecieron en la Ciudad de Nueva York, en el año 2018 y 2021 respectivamente. Alegó que todos los bienes a dividirse eran bienes gananciales y aseguró que ambos padres murieron intestados, por lo que la herencia de cada causante debía dividirse en partes iguales entre las tres hijas. Sostuvo además que todos los bienes muebles e inmuebles que se incluyeron en su causa de acción se encontraban localizados en Puerto Rico. Asimismo, planteó que la causante Hebe Beauchamp Ocasio tenía derecho como heredera a una partición privada no repartida de la sucesión de Beauchamp de Jesús y Ocasio Villafañe. Por último, arguyó que la señora Nicole Ramos vendió a su padre, el señor Ramos Nazario, su participación en la herencia de su madre y añadió que, esta tiene también una deuda a favor de la sucesión de su padre.

Por todo lo anterior, la señora Nimia Ramos solicitó al foro primario *inter alia* que decretara la partición de herencia de ambos causantes, determinando y adjudicando los valores y bienes específicos que corresponden a cada una de las herederas, que la nombrara única Administradora, Ejecutora y Contadora Partidora de la herencia de ambos causantes y que determinara que la señora Nicole Ramos no tenía derecho a la herencia de la causante Hebe Beauchamp Ocasio.

Posteriormente, el 6 de septiembre de 2023, la señora Nimia Ramos presentó *Moción Solicitando Sentencia Sumaria y/o en Rebeldía y/o por las Alegaciones*. En esta esencialmente reprodujo los argumentos esbozados en la demanda y solicitó además que tras haberle sido anotada la rebeldía a las señoras Noemí Ramos y Nicole

Ramos, el tribunal tomara como aceptados y admitidos todos los hechos y alegaciones formulados en la demanda.

Empero, luego de varios trámites procesales, mediante la *Orden* de 11 de diciembre de 2023, el foro primario dejó sin efecto la anotación de rebeldía contra la señora Noemí Ramos.

Así las cosas, el 2 de enero de 2024, la parte apelada presentó *Moción en Oposición a Sentencia Sumaria*. Mediante la misma, planteó que el cuaderno particional sometido por la señora Nimia Ramos junto con su solicitud de sentencia sumaria no estaba juramentado ni acompañado de prueba que sustentara los créditos solicitados. De igual forma, sostuvo que la parte apelante no podía utilizar una decisión del Tribunal del Estado de Nueva York para despojar a una heredera forzosa de su participación en el caudal hereditario de su causahabiente, sin que se hubiese emitido previamente un exequátur en nuestra jurisdicción, conforme a lo requerido por las Reglas de Procedimiento Civil de Puerto Rico. Asimismo, alegó que la señora Nimia Ramos no ha rendido cuentas a las coherederas sobre la administración de los bienes de la sucesión y se opuso a que esta fuese nombrada administradora del caudal hereditario. Por todo lo anterior, puntualizó que existían hechos materiales que debían ser atendidos para poder disponer de los bienes hereditarios y que, a su vez, impedían resolver el asunto de forma sumaria.

Trabada así la controversia, el 7 de octubre de 2024, el foro de instancia notificó *Resolución y Orden* denegando la solicitud de sentencia sumaria presentada por la señora Nimia Ramos. El foro primario concluyó que la referida moción no cumplió con los requisitos procesales y sustantivos de la Regla 36 de Procedimiento Civil y que la parte apelante no cumplió con el requisito de presentar un proyecto de cuaderno particional de ambos causantes.

En desacuerdo con la determinación, la señora Nimia Ramos presentó *Solicitud de Reconsideración a Orden y Resolución No Ha Lugar a Sentencia Sumaria Debido a Errores de Facto Indicados para Tomar Determinación*. En esta, alegó haber cumplido con los requisitos enumerados en la resolución y sostuvo que el foro primario debía reconsiderar su determinación.

Luego de varios trámites procesales, el 22 de octubre de 2024, el TPI emitió la *Sentencia* que hoy revisamos. Mediante la sentencia apelada, el foro primario denegó la solicitud de reconsideración de la señora Nimia Ramos y, a su vez, desestimó sin perjuicio la causa de acción incoada por falta de emplazamiento y parte indispensable.

En desacuerdo, la señora Nimia Ramos presentó *Solicitud de Reconsideración de Sentencia de Desestimación Emitido el 22 de octubre de 2024 e Informe y Solicitud de Otros Asuntos Incluyendo Prórroga*. No obstante, el tribunal de instancia emitió *Resolución Interlocutoria* decretando no ha lugar la solicitud de reconsideración.

Todavía inconforme con los pronunciamientos del foro de instancia, la señora Nimia Ramos acudió ante nos el 18 de diciembre de 2024 mediante recurso de *Apelación Civil* señalando varios errores, los cuales versan sobre los siguientes asuntos: 1) quienes son las partes indispensables y partes no indispensables en el pleito; 2) el incumplimiento con los requisitos de la moción de sentencia sumaria conforme a la Regla 36 de Procedimiento Civil; 3) no haber convalidado la sentencia emitida por el tribunal del estado de Nueva York mediante el procedimiento de exequátur; 4) incumplimiento con el procedimiento y administración de las sucesiones; 5) no haber tomado en consideración la evidencia presentada por la parte apelante y; 6) que el foro primario no optó por un curso que permitiera continuar con el caso como era lo dispuesto en la Regla 17.2 de Procedimiento Civil.

El 6 de febrero de 2025, la señora Noemí Ramos compareció mediante *Alegato de la Parte Apelada.* Luego, el 7 de febrero de 2025, la parte apelante presento *Moción Informativa: Urgente: Venta Inminente de Propiedad por Partes No Indispensables Hacen Académico Argumento de Parte Demandadas - Apeladas.*

Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II.

### A.

La Regla 16.1 de Procedimiento Civil es la que regula lo concerniente a la acumulación de partes indispensables. 32 LPRA Ap. V, R. 16.1.

En ese sentido, la regla sobre acumulación indispensable de partes tiene el propósito de proteger a la persona que no está presente de los efectos legales de la sentencia y así evitar que se multipliquen los pleitos. En todo caso, "[l]a falta de parte indispensable constituye un planteamiento tan relevante y vital que puede presentarse en cualquier momento, incluso, que se puede presentar por primera vez en apelación, e incluso el tribunal apelativo puede suscitarlo *sua ponte*, ya que, en ausencia de parte indispensable, el tribunal carece de jurisdicción". *RPR & BJJ, Ex parte*, 207 DPR 389 (2021); *Romero v. SLG Reyes*, 164 DPR 721, 733 (2005), citando *Hernández Agosto v. López Nieves*, 114 DPR 601, 625 (1983).

La Regla 16.1 de Procedimiento Civil, *supra*, define parte indispensable como, "[l]as personas que tengan un interés común sin cuya presencia no pueda adjudicarse la controversia". También, una parte indispensable es de la cual "[n]o se puede prescindir, pues sin su presencia, las cuestiones litigiosas no pueden ser adjudicadas correctamente, ya que sus derechos quedarían afectados". *Allied Mgmt Group. v. Oriental Bank*, 204 DPR 374, 389 (2020); *Rivera*

*Marrero v. Santiago Martínez*, 203 DPR 462, 479 (2019); *López García v. López García*, 200 DPR 50, 63 (2018). La referida Regla nos señala que, dichas partes deben acumularse como demandantes o demandadas, según corresponda y, de rehusarse a unirse como demandante, podrá unirse como demandada. *Íd.* Por consiguiente, ese esencial incluir a toda parte indispensable en un determinado pleito para que el decreto judicial emitido resulte completo. *Sánchez v. Sánchez*, 154 DPR 645, 678 (2001).

La anterior Regla tiene como objetivo impedir que la persona ausente sea privada de su propiedad sin un debido proceso de ley. *Romero v. SLG Reyes*, supra, en las págs. 733-734. Por consiguiente, de percatarse que hay ausencia de parte indispensable, debe desestimarse la acción. No empece a esto, dicha desestimación no tendrá efecto de una adjudicación en los méritos o cosa juzgada. *Romero v. SLG Reyes*, supra, pág. 734.

El tratadista Cuevas Segarra explica que, "[l]a determinación final de si una parte debe o no acumularse depende de los hechos específicos de cada caso individual. Exige una evaluación jurídica de factores tales como tiempo, lugar, modo, alegaciones, prueba, clases de derechos, intereses en conflicto, resultado y formalidad. J.A. Cuevas Segarra, *Tratado de Derecho Procesal Civil*, 2da ed., Estados Unidos, Pubs. JTS, 2011, T. II, pág. 695.

Como es harto conocido, la falta de parte indispensable "constituye una defensa irrenunciable y susceptible de consideración en cualquier etapa durante el procedimiento". *López García v. López García*, 200 DPR 50, 65 (2018). Es menester destacar que no acumular una parte indispensable priva al tribunal de jurisdicción sobre la persona, y como consecuencia, si emite una sentencia en ausencia de la parte indispensable, esta sería nula. *Rivera Marrero v. Santiago Martínez*, supra, pág. 479; *García Colón v. Sucn. González*, 178 DPR 527, 550 (2010).

**B.**

Como es sabido, al fallecer una persona, los derechos y obligaciones que no se extingan con su muerte se transmiten a sus herederos. 31 LPRA sec. 10911. Por consiguiente, la herencia comprende todos los derechos y las obligaciones transmisibles por causa de la muerte de una persona. 31 LPRA sec. 10917. A esos efectos, cuando concurre a la sucesión una pluralidad de personas con derechos en la herencia expresados en cuotas abstractas surge la comunidad hereditaria. 31 LPRA sec. 11071.

La comunidad hereditaria tiene unas características particulares que la distinguen de la comunidad ordinaria de bienes. Primeramente, la comunidad hereditaria es universal, pues recae sobre la universalidad del caudal hereditario y no sobre bienes específicos. *Cruz Pérez v. Roldán Rodríguez et al.,* 206 DPR 261, 268 (2021). Además, es una comunidad forzosa, "en cuanto surge con independencia absoluta de la voluntad de los titulares", y es de carácter transitorio, "pues se constituye por la ley para disolverse por la partición". [Cita omitida]. *Kogan v. Registrador*, 125 DPR 636, 651 (1990). Por otro lado, en la comunidad de bienes "coinciden varios titulares sobre uno o más bienes determinados, mientras que la comunidad hereditaria se refiere a la cotitularidad sobre un patrimonio relicto con sus múltiples elementos de activo y pasivo. Los interesados tienen sobre el patrimonio del causante la titularidad de una cuota en abstracto, pero no sobre bienes en particular". Id., págs. 651-652.

Ahora bien, es por todos conocido que el procedimiento adecuado para ponerle fin a la comunidad hereditaria es la acción de partición de herencia. Dicho procedimiento está regulado en los artículos 1774 al 1781 del Código Civil de Puerto Rico, 31 LRPRA secs. 11641-11648. *Sucn. Maldonado v. Sucn. Maldonado*, 166 DPR

154, 176 (2005). La partición de herencia se ha definido de la siguiente forma:

> *[E]s aquel acto jurídico, unilateral o plurilateral, necesario e irrevocable, de naturaleza declarativa, compuesto de un conjunto ordenado de operaciones verificadas sobre ciertas bases o supuestos de hecho y de derecho, y en el cual, después de determinarse el activo y el pasivo de la masa hereditaria y de proceder a su avalúo y liquidación, se fija el haber de cada partícipe, se divide el caudal partible y se adjudica cada lote de bienes formado a cada heredero respectivo, provocando la transformación de las participaciones abstractas de los coherederos sobre el patrimonio relicto (derecho hereditario) en titularidades concretas sobre bienes determinados (dominio o propiedad exclusiva u ordinaria).* [cita omitida]. Id.

Existen varias formas de realizar la partición de la herencia. No obstante, la que nos concierne, en este caso, es la partición judicial. Nuestro Código Civil dispone que "[a] falta de acuerdo unánime, cualquier titular de la herencia puede instar la partición judicial en la forma prevista en la ley procesal". 31 LPRA sec. 11647. Asimismo, según el profesor Vélez Torres, la partición judicial es

> *aquella que ordena el tribunal cuando así lo solicite un albacea, un administrador o una persona de las que la ley señala* [cita omitida], *o los herederos, cuando, por alguna razón, estos no quisieren o no pudieren ponerse de acuerdo* (Artículo 1012, 31 L.P.R.A. 2878). *En tal caso, se solicitará la intervención judicial conforme a lo que dispone la Ley de Enjuiciamiento Civil.* [citas omitidas]. J.R. Vélez Torres, <u>Curso de Derecho Civil: Derecho de Sucesiones</u>, 2da ed. rev., San Juan, Ed. Rev. Jur. U.I.A., 1992, T. IV, Vol. III, pág. 507.

La acción de partición de herencia, para poder ejercitarla, requiere que se cumplan dos condiciones: *(1) el descendiente tiene que haber aceptado la herencia, teniendo un derecho actual y definitivo sobre esta, y (2) que el heredero tenga la libre administración y disposición de sus bienes. Sucn. Maldonado v. Sucn. Maldonado*, supra, pág. 177. Por tanto, la parte *demandante en una acción de partición de herencia deberá acreditar su capacidad para ello, esto es, su condición de heredero o de causahabiente de un*

*heredero.* E. González Tejera, op. cit., pág. 409.  A estos efectos, puede presentar ante el tribunal el testamento o la declaratoria de herederos.

En cuanto al procedimiento de partición, este consiste en cuatro etapas que se conocen como las operaciones particionales. Primeramente, se realiza un inventario y avalúo, tanto de los activos como de los pasivos que componen el caudal hereditario. El inventario consiste en una relación de bienes descritos o detallados de manera que queden suficientemente individualizados e identificados. J.R. Vélez Torres, op. cit., pág. 523. A su vez, el avalúo es la tasación o valoración de cada uno de los bienes del inventario conforme al estado de dichos bienes al momento de la partición. *Íd.* En segundo lugar, se procede a la liquidación del caudal, esto es, se liquidan los pasivos del haber hereditario. Al finalizar la liquidación, queda entonces el caudal hereditario neto sujeto a división. Tercero, se realiza la división del caudal neto, señalando la cuota o haber que le corresponde a cada heredero. Por último, se adjudican dichas cuotas a los herederos a través de bienes o valores determinados. E. González Tejera, op. cit., págs. 481-499.

Ahora bien, cabe puntualizar que

> *por sus costos, dilaciones y efectos negativos en el plano de las relaciones interpersonales entre los herederos, usualmente miembros de una familia,* **la partición judicial de la herencia debe ser un recurso que sólo debe utilizarse cuando no haya otra alternativa para poner fin al estado de indivisión hereditaria***.* E. González Tejera, <u>Derecho de Sucesiones: La Sucesión Intestada</u>, San Juan, Ed. U.P.R., 2001, T.1, pág. 473. (Énfasis nuestro).

### III.

En su recurso, la señora Nimia Ramos sostiene que el foro primario incidió al determinar que existían partes indispensables adicionales que no fueron acumuladas en el pleito. Esto tras afirmar que solo solicita determinación en cuanto a los bienes gananciales de las sucesiones Ramos Nazario y Beauchamp Ocasio y no de los

bienes privados de la causante Hebe Beauchamp Ocasio. Sobre este particular, puntualiza que nada impide que en un pleito se parta y adjudique la herencia de uno o varios causantes y de otro lado se deje sin partir y adjudicar los bienes privativos de una de las partes, pero relacionados con las herencias de otros causantes. Afirma la parte apelante que, por razones de índole práctica, evitar largas demoras y gastos innecesarios y posibilitar que se partan las herencias de los causantes, únicamente solicita la partición de herencia sobre los bienes gananciales de sus progenitores, quienes estuvieron casados entre si hasta la muerte de Hebe Iris Beauchamp Ocasio.

De otra parte, la señora Noemí Ramos aduce que el propósito del procedimiento de partición de una herencia es ponerle fin a esta en su totalidad. Manifiesta además que acudir al tribunal significa que no existe acuerdo entre las partes. Por ello, plantea que la señora Nimia Ramos no podía escoger cuáles bienes liquidar y cuáles no. Asimismo, reitera la parte apelada que, como corresponde que se adjudique la herencia en su totalidad, los herederos de las distintas sucesiones eran partes indispensables que debieron ser incluidas en el pleito. Por último, señala que toda vez que transcurrió un término de más de 120 días sin que la parte apelante emplazara a los demás herederos, lo único que procedía era desestimar la demanda. *No le asiste la razón.*

De otra parte, surge del dictamen apelado, que el TPI concluyó que, la señora Nimia Ramos no emplazó a los miembros de la sucesión Beauchamp de Jesús y Ocasio Villafañe. Además, consignó que la parte apelante solicitó "la disolución de una partición privada no repartida de la sucesión de Beauchamp de Jesús y Ocasio Villafañe que está vigente y bajo la administración de Rene Beauchamp Ocasio, hermano de Doña Hebe y también heredero de la sucesión de Beauchamp de Jesús y Ocasio Villafañe". De igual

forma, determinó que no podía liquidar la sucesión de la señora Beauchamp Ocasio, madre de la parte apelante, sin que antes se hubiese efectuado la liquidación de las sucesiones Beauchamp de Jesús y Ocasio Villafañe. En virtud de todo lo concluido, el foro primario determinó que procedía la desestimación, sin perjuicio, de la demanda presentada por el fundamento de falta de parte indispensable y falta de emplazamiento.

Empero, luego de un análisis concienzudo de los hechos particulares del caso y de los argumentos presentados por las partes en sus respectivos escritos y a la luz del derecho expuesto, somos del criterio de que erró el foro primario al desestimar la demanda.

Si bien de las alegaciones de la demanda surge que la señora Nimia Ramos hizo mención en cuanto a que la causante Hebe Beauchamp Ocasio tenía derecho a una partición privada no repartida de la sucesión Beauchamp de Jesús y Ocasio Villafañe, no podemos concluir que la parte apelante solicitó la partición de la referida herencia. Los escritos presentados ante el foro primario y ante este foro revisor son muestra clara de que la parte apelante únicamente solicitaba la partición en cuanto a los bienes gananciales de sus progenitores.

Asimismo, la señora Nimia Ramos presentó ante el Honorable Tribunal un escrito intitulado *Moción Informativa: Urgente: Venta Inminente de Propiedad por Partes No Indispensables Hacen Académico Argumento de Parte Demandadas - Apeladas*, mediante el cual reiteró que las únicas partes indispensables en el pleito son las señoras Nimia, Noemí y Nicole Ramos. A su vez, aclaró que lo referente a la participación hereditaria de Hebe Beauchamp Ocasio en la sucesión de Beauchamp de Jesús y Ocasio Villafañe se estaba resolviendo de forma extrajudicial con el aval de todos los coherederos—incluyendo a las señoras Noemí y Nicole Ramos—e

incluso anejó copia del correo electrónico enviado como prueba de su alegación.

Por ello, no vemos motivos para entender que el presente pleito debía ser desestimado hasta tanto se liquidaran las sucesiones Beauchamp de Jesús y Ocasio Villafañe. Esto con mayor razón cuando resulta evidente que dicho asunto se está trabajando de forma extrajudicial. Además, lo que suceda con la liquidación de las referidas sucesiones no impide que el tribunal pueda resolver en los méritos la solicitud de partición de herencia de la aquí parte apelante. En consonancia con lo anteriormente expuesto, en el presente caso, procedía que el foro primario continuase con los procedimientos y efectuase la partición de herencia conforme a las normas de nuestro ordenamiento jurídico únicamente en cuanto al caudal hereditario existente.

Resuelto lo anterior, entendemos que no es meritorio que atendamos los demás planteamientos de error.

### IV.

Por los fundamentos antes esbozados, ***revocamos*** la *Sentencia* emitida por el Tribunal de Primera Instancia, Sala Superior de Bayamón, y devolvemos el caso al foro de instancia para la continuación de los procedimientos de conformidad con lo aquí resuelto.

Lo acordó el Tribunal y lo certifica la Secretaria.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones